IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ZEAL RESERVE CAPITAL PARTNERS, a limited partnership,<br><br>Plaintiff,<br><br>vs.<br><br>SUDRANIA FUND SERVICES CORP., an Illinois Corporation aka FORMIDIUM; FORMIDIUM CORP., a Delaware Corporation<br><br>Defendants. | Case No. 1:23-cv-15321 |

**FORMIDIUM'S REPLY IN SUPPORT OF**
**ITS MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6)**

Formidium Corp. ("Formidium") respectfully submits this reply in support of its Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In its response, Plaintiff resorts to misrepresenting its own Complaint allegations to advance legal theories having no application to the facts of this case under well-settled principles of Illinois and federal law. As such, the Complaint should be dismissed with prejudice.

In it motion to dismiss, Formidium established that:

- Counts I, V, and VI, all of which purport to seek recovery for economic loss in tort, are barred by the economic loss doctrine;

- Count I, which purports to allege conversion, should also be dismissed for the independent reason that it fails to properly plead that Formidium ever had possession of the allegedly stolen cryptocurrency;

- Count IV, which purports to allege a claim under the Computer Fraud and Abuse Act ("CFAA"), should be dismissed because it fails to allege a cognizable injury under the CFAA; and

- Counts II and III, which purport to allege claims for breach of fiduciary duty and constructive fraud, should be dismissed because Plaintiff fails to allege that Formidium owes it a fiduciary duty.

As demonstrated below, each of the arguments Plaintiff makes in its response is undermined by Plaintiff's own allegations and applicable law. First, contrary to Plaintiff's assertion, Counts I, IV and VI are all barred by the economic loss doctrine because the parties entered into a detailed Master Services Agreement ("MSA") that defines and limits the roles and responsibilities of Formidium, none of which are to act as Plaintiff's "accountant." Second, with respect to Plaintiff's conversion claim in Count I, Plaintiff does not address the case law and argument establishing that simply identifying an IP address belonging to any person (in this case Seamless Crypto) does not sufficiently allege that that person (in this case Formidium) ever possessed the cryptocurrency at issue. Finally, the Plaintiff's claimed definition of damage under the CFAA is precluded by United States Supreme Court holding in *Van Buren v. United States*, 141 S. Ct. 1648, 1659–60 (2021), which requires that damages be related to actual computer impairment (and even if the definition advanced by Plaintiff applied, Plaintiff's claimed damages do not relate to losses contemplated by the CFAA).

I.  **Plaintiff's tort and fiduciary duty claims (Counts I, II, III, V and VI) are barred by the economic loss doctrine because Formidium is not Plaintiff's "accountant" and owed it no fiduciary duty.**

Plaintiff attempts to survive dismissal by claiming the existence of a fiduciary relationship by asserting that Formidium is Plaintiff's "accountant" which owed it extra-contractual duties. To Plaintiff, brandishing the word "accountant" in its response brief somehow cures the Complaint deficiencies, evades the effect of *Moorman* and its progeny, and creates an independent fiduciary duty. The Court should reject Plaintiff's attempt to use its response brief to change the basis for the claims asserted in the Complaint. *Agnew v. Nat'l Collegiate Athletic Ass'n.*, 683 F.3d 328, 348 (7th Cir. 2012) (noting that a complaint cannot be amended by plaintiff's brief in opposition to a motion to dismiss).

Plaintiff's Complaint does not allege that Formidium is an accountant or that Plaintiff and Formidium were ever in an accountant-client relationship. In fact, Plaintiff's allegations as to the source of Formidium's duties directly undercut its new characterization in its response brief: Plaintiff alleges that Formidium owed fiduciary duties "[a]s Plaintiff's Fund Services Provider," not as Plaintiff's accountant. (Compl. ¶ 30.) Plaintiff further alleges that Formidium's fund services were provided to Plaintiff "pursuant to the MSA[.]" (Compl. ¶ 12.) Despite these allegations, Plaintiff now argues in its response, but does not allege in its Complaint, that it "expected that Formidium would provide financial services using its own expertise and judgment" based on an accountant-client relationship which does not exist in this case. (Pl.'s Resp. at 8.) In addition, Plaintiff argues that Formidium's work is solely intangible. (*Id.*) Plaintiff's arguments point to no allegations in its Complaint and are otherwise meritless.

Formidium's duties are all defined by the very contract alleged in the Complaint: the MSA. Plaintiff's own allegations make clear that its relationship with Formidium derived exclusively from the MSA under which Formidium was to provide fund administration services. (Compl. ¶ 12.) The MSA detailed the *specific* and *limited* tasks that Formidium would perform for Plaintiff. (*See* Exhibit 1 to Defs.' Mem. Supp. Mot. Dismiss, ¶ 1; *id.*, Statement of Work at 5–8.) The MSA confirms Formidium's limited duties when it states that Formidium "shall be responsible for the performance of *only such duties as are set forth in this agreement*." (Exhibit 1 to Defs.' Mem. Supp. Mot. Dismiss, ¶ 6(a) (emphasis added).) Moreover, Plaintiff agreed that Formidium would not be liable for actions outside of Formidium's "part in the performance of its *obligations and duties specifically set forth in this Agreement*." (Exhibit 1 to Defs.' Mem. Supp. Mot. Dismiss, ¶ 6(b) (emphasis added).)

Because the MSA is the contractually agreed-upon source of Formidium's relationship with and duties to Plaintiff, it is also dispositive of each of the arguments Plaintiff raises in response. First, because the MSA establishes the duties as between Formidium and Plaintiff, it disposes of Plaintiff's attempt to sidestep the *Moorman* doctrine. Plaintiff's reliance on *Congregation of the Passion v. Touche Ross & Co.* is misplaced as that case stands for the limited proposition that the *Moorman* doctrine does not apply to the traditional accountant-client relationship where the client sues the accountant for accounting malpractice. *See* 159 Ill. 2d 137, 164 (1994). Courts in this district have recognized the limited nature of *Congregation of the Passion* in the context of service industry jobs. *See Rees-Evans v. AMP Global Clearing, LLC*, No. 20-cv-07169, 2021 WL 5578761, *6–*7 (N.D. Ill. Nov. 30, 2021) (J. Valderrama); *Integra Healthcare, S.C. v. APP of Ill. H.M. PLLC*, Case No. 18 C 3589, 2019 WL 3766122, at *4–*5 (N.D. Ill. Aug. 9, 2019) (J. Pallmeyer). In *Rees-Evans*, for example, plaintiffs sought to avoid the *Moorman* doctrine by citing *Congregation of the Passion* and arguing that a securities commodities broker owes an extracontractual duty to the broker's client. 2021 WL 5578761, at *7. The District Court rejected that argument, noting that this was "a service that is defined by an agreed-upon contract" and that plaintiffs failed to "present any coherent argument for expanding *Congregation* beyond the accountant-client relationship." *Id.* Plaintiff's argument in this case suffers from the same defect as that of the plaintiffs in *Rees-Evans* and Plaintiff offers no basis for why this Court should ignore *Moorman*.

The other cases cited by plaintiff are likewise inapposite. The court in *Collins v. Reynard*, 154 Ill. 2d 48 (Ill. 2013), recognized that its own ruling was limited to instances of *legal malpractice*. 154 Ill. 2d 48, 52 ("Finally, it is to be noted that the ruling we announce today is limited to the specific field of lawyer malpractice as an exception to the so-called *Moorman*

doctrine[.]"). Similarly, *Kanter v. Deitelbaum*, 271 Ill. App. 3d 750 (1st Dist. 1995), involved wrongdoing associated with an insurance broker. *Kanter v. Deitelbaum*, 271 Ill. App. 3d 750, 755 ("We hold that under the facts and circumstances, an insurance broker, admittedly having a fiduciary duty to an insured, is in no different position than an attorney or an accountant in relationship to plaintiffs."). In this case, neither legal malpractice nor the fiduciary relationship between insurance broker and insured is at issue and thus neither of these cases applies.

Plaintiff argues that because the MSA does not expressly discuss cryptocurrency *transfers*, the alleged transfer of cryptocurrency cannot be an act arising out of the MSA. But the MSA's silence on transferring[1] cryptocurrency does not save Plaintiff's claim because the alleged conduct leading up to the alleged transfer of the cryptocurrency necessarily occurred solely because of Plaintiff's contract with Formidium. Notably, Plaintiff itself alleges that its provision of the API key to Formidium was "in furtherance of its duties as [Plaintiff's] Fund Services Provider" so that Formidium could complete its duties under the MSA and that using this API key, Formidium provided the services as contemplated under the MSA without incident. (Compl. ¶ 13.) Use of that API Key, including the alleged wrongdoing, is thus necessarily governed by the MSA, not an extracontractual duty as contemplated by a traditional accountant-client relationship as in *Congregation of the Passion*. Plaintiff's tort claims are rooted in what Formidium was permitted to do under the parties' contract—the claims are not rooted in an amorphous accountant-client relationship that Plaintiff presents for the first time in its response brief.

---

[1] Plaintiff argues for the first time in its response that Formidium *sold* the cryptocurrency at issue. (Pl.'s Resp. at 6.) This allegation is nowhere in the Complaint and thus should be disregarded. *See Agnew*, 683 F.3d at 348 (noting that a complaint cannot be amended by plaintiff's brief in opposition to a motion to dismiss).

Plaintiff's fiduciary duty claim (Count II) also fails because Formidium's duties to Plaintiff arose from the MSA which contains no agreement by Formidium to serve as Plaintiff's fiduciary. Plaintiff argues that it placed "trust and confidence" in Formidium because, according to Plaintiff, Formidium was Plaintiff's accountant. (Pl.'s Resp. at 13–14.) But the Complaint does not allege that Plaintiff reposed any "trust and confidence" in Formidium based on its being Plaintiff's "accountant." The claim itself alleges only that Formidium owed fiduciary duties "as Plaintiff's Fund Services Provider," not its accountant. (Compl. ¶ 30.) As Plaintiff alleges, Formidium's role as Fund Services Provider is expressly based on the MSA: "Pursuant to the MSA, Formidium agreed to act as fund administrator for [Plaintiff.]" (Compl. ¶ 12.) Plaintiff alleges this contractual role included collecting a Plaintiff-generated API Key and then using the API Key to provide fund administration services pursuant to the MSA. (Compl. ¶ 13.)

Plaintiff's Complaint allegations amount to nothing more than an attempt to conflate an arms-length contractual relationship to a fiduciary relationship. *H.C. Duke & Son, LLC v. Prism Mktg. Corp.*, Case No. 4:11-cv-04006-SLD-JAG, 2013 WL 5460209, at *4 (C.D. Ill. Sept. 30, 2013). Plaintiff's arguments do not and cannot change the fundamental characteristic of the relationship between Plaintiff and Formidium which is based on the MSA. Accordingly, the Court should dismiss Counts I, II, III, V, and VI with prejudice.

**II.       Count I (conversion) also fails because Plaintiff does not sufficiently allege the identity of the entity in possession of the cryptocurrency.**

Plaintiff's conversion claim, Count I, should also be dismissed for the independent reason that Plaintiff fails to allege the identity of the unnamed third-party who transferred the cryptocurrency. Plaintiff argues in response that it sufficiently pled a conversion claim under Illinois law. (Pl.'s Resp. at 9–10.) However, Plaintiff does not confront a key component of Formidium's argument: allegations of IP Address ownership are *insufficient* to establish a link

between the unnamed third-party and the Defendant. *See, e.g., Guava LLC v. Comcast Cable Commc'ns, LLC*, 2014 IL App (5th) 130091, ¶¶ 62–64; *Malibu Media LLC v. Doe*, No. 13 C 6312, 2016 WL 464045, at *7 (N.D. Ill. Feb. 8, 2016). Put simply, when an IP Address is used to identify an unnamed third-party, the allegation only discloses the location of an internet line and does nothing to differentiate between "the subscriber, a member of his or her family, an employee, invitee, neighbor, or interloper." *Guava LLC*, 2014 IL App (5th) 130091, ¶ 64.

Instead, in Plaintiff's conclusion, it argues that it should be granted leave to amend so that Plaintiff "can allege more facts to show a relationship between Seamless Crypto and Formidium, and that they are alter egos of one another." (Pl.'s Resp. at 14.) Plaintiff's request for leave to amend misses the point and would be futile even if the amendment was allowed. There is no debate that Seamless Crypto is a Formidium product and that Seamless Crypto owns the IP Address referenced in the Complaint. Further, Plaintiff alleges that the IP Address was recorded as accessing sFox's accounts. Those allegations are still *insufficient* to allege conversion because the causal connection between the IP Address and the end-user requires more than simply identifying IP Address ownership. *See Guava LLC*, 2014 IL App (5th) 130091, ¶ 64; *Malibu Media LLC*, 2016 WL 464045, at *7.

### III. Count IV ("CFAA") fails because *all* of Plaintiff's allegations of harm are insufficient as a matter of law.

Plaintiff's claim that its CFAA claim is saved by a split of authority in this Judicial District (Pl.'s Resp. at 11.) is wrong. The United States Supreme Court has described the CFAA's definition of loss as "costs caused by harm to computer data, programs, systems, or information systems." *Van Buren v. United States*, 141 S. Ct. 1648, 1659–60 (2021). "The statutory definitions of 'damage' and 'loss' thus focus on technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data. Limiting 'damage' and 'loss' in this

7

way makes sense in a scheme 'aimed at preventing the typical consequences of hacking.'" *Id.* at 160 (quoting *Royal Truck & Trailer Sales & Serv., Inc. v. Kraft*, 974 F.3d 756, 760 (6th Cir. 2020). The *Farmers Insurance Exchange v. Auto Club Group* line of cases that Plaintiff relies on predates the Supreme Court's decision in *Van Buren*. 823 F. Supp. 2d 847 (N.D. Ill. 2011). Thus, Formidium's arguments and case law cited in its motion to dismiss that stand for the proposition that loss absent technological harm, including the lost value of cryptocurrency, are unaffected by the split of district court authority noted in *Farmers*. *See, e.g., Fraser v. Mint Mobile, LLC*, No. C 22-00138 WHA, 2022 WL 1240864, at *5 (N.D. Cal. Apr. 27, 2022) (citing *Van Buren*'s definition of "loss" and "damage"). The Court should thus dismiss the CFAA claim.

Even if the Supreme Court's *Van Buren* decision did not resolve the issue, *Farmers* does not support Plaintiff's case. In fact, the court in *Farmers* agreed that "costs not related to computer impairment or computer damages are not compensable under the CFAA." 823 F. Supp. 2d at 855.

> To the extent Farmers has claimed costs incurred as a result of "determining and complying with customer security breach notification obligations as required by the laws of the States in which the affected customers reside," the loss of "present and future business," and damages to its reputation, the court finds that these allegations do not satisfy the CFAA's definition of loss. These losses are not directly attributable to Auto Club's unauthorized computer access itself, but are instead properly attributable to the resulting disclosure of certain confidential information to Auto Club personnel and Auto Club's subsequent use of Farmers' confidential policyholder information to Farmers' detriment. As such, these damages "are better addressed, as they are here, under . . . trade secrets law."

*Id.* at 855–56 (quoting *SKF USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696, 721 (N.D. Ill. 2009). Because *Farmers* concluded that the plaintiff's costs associated with its state law obligations to notify customers of a security breach did not constitute loss, the "actual cost of Farmers' damage assessment, by itself, is not clear from the face of the First Amended Complaint[,]" and the Court therefore dismissed the claim. *Id.* at 856.

8

In *ExactLogix, Inc. v. JobProgress, LLC*, Judge Johnston examined the *Farmers* split and determined that "loss" is equivalent to "costs" which "are expenditures to address or remedy the violation, which has a reasonable causal connection." 508 F. Supp. 3d 254, 267 (N.D. Ill. 2020) (J. Johnston). "The purported loss must have a reasonable causal connection to the CFAA violation, instead of costs associated with the loss of confidential information or preparation for litigation[.]" *Id.* at 268.

Here, Plaintiff alleges its damages include "$244,000 as a result of the unauthorized access to its account on sFox's computer system and website" and "damages in excess of $1,400,000, which includes, but is not limited to damages for service fees paid to sFox and Formidium, fund closure expenses, lost labor expenses in creating and servicing the fund, labor costs in responding to the hack, lost further profits and investigation costs." (Compl. ¶ 19.) A majority of these supposed "losses" are non-compensable under *ExactLogix* and *Farmers*. Plaintiff's conclusory allegation that $244,000 was lost as a result of the alleged conduct does not make clear whether the costs are related to computer impairment or computer damages. To the extent these damages are related to the lost value of the cryptocurrency, these damages are not compensable under the CFAA. *See Fraser*, 2022 WL 1240864, at *5; *Nowak v. Xapo, Inc.*, No. 5:20-CV-03643-BLF, 2020 WL 6822888, at *4 (N.D. Cal. Nov. 20, 2020). Moreover, service fees, fund closure expenses, lost labor expenses, and lost profits are not "expenditures to address or remedy the violation." The remaining damages, labor costs and investigation costs in responding to the hack, are not described with reasonable particularity to make it "clear from the face of [Plaintiff's Complaint]" whether those damages satisfy CFAA's statutory requirements. *Farmers*, 823 F. Supp. 2d at 856. Accordingly, the Court should dismiss Count IV.

**CONCLUSION**

Plaintiff requests that this Court grant it leave to amend its Complaint if the Court grants Formidium's Motion to Dismiss. Because Plaintiff's proposed amendment regarding ownership of Seamless Crypto would be legally insufficient to save the Complaint, the Court should deny this request. *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("Leave to amend need not be granted, however, if it is clear that any amendment would be futile."). Accordingly, the Court should reject Plaintiff's arguments, grant Defendants' Motion to Dismiss, and dismiss Plaintiff's Complaint, with prejudice.

Dated: January 26, 2024          Respectfully submitted,

         By: /s/ *Joseph L. Fogel*
             Counsel for Defendants

         Joseph L. Fogel
         Alexander A. Pabon
         Smith, Gambrell & Russell, LLP
         311 S. Wacker Drive, Suite 3000
         Chicago, IL 60606
         jfogel@sgrlaw.com
         apabon@sgrlaw.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 26, 2024, he caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Joseph L. Fogel*